UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA ALLEN KERN,

      Petitioner,      Case No. 1:12-cv-1226

v.              Honorable Robert J. Jonker

CARMEN PALMER,

      Respondent.
_____/

# OPINION

    This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner is incarcerated in the Michigan Reformatory. The criminal conviction at issue in this case arose from an incident that occurred on June 20, 2010, in a Big Lots parking lot in Niles, Michigan. In his application for leave to appeal in the Michigan Court of Appeals, Petitioner included the following description of the offense from the presentence report:

> According to the police report, provided to this agent by the Michigan State Police Post 53-Niles, along with a Supplemental Report, written by Patrolman Denny Butler, of the Three Oaks Police Department, on or about June 20, 2010, state troopers responded to the Big Lots Store in the City of Niles, located at 1905 S. 11th Street. At that location, officers met with Brock C. Thompson, the victim, who stated he was followed by individuals in a white van to the Big Lots Store. Mr. Thompson parked his vehicle and an individual, described as having scruffy facial hair, pulled up next to him and was the driver. He indicated the driver got out of the vehicle and walked toward him, while another individual remained in the van. Mr. Thompson stated the driver, [who] was later learned to be co-defendant, Letcher Burgess Ellis, Jr., asked Thompson if he had any marijuana. Brock Thompson indicated he did not. He told the individual he was on probation and did not want to be involved in that. Mr. Ellis stated, "Well, you look the part because of your jersey and crooked hat." Thompson then indicated that he saw a gun come out of the rear passenger's side of the sliding window of the van, with the gun pointed at his chest. Fortunately for Mr. Thompson, the gun misfired, and the defendant, Joshua Allen Kern, who was holding the gun, was able to put his weapon back into use and again pointed it at Brock Thompson and pulled the trigger. Again Mr. Thompson was fortunate that the bullet missed him. The defendant was not done yet and fired another round that also missed Mr. Thompson. Mr. Thompson then ran toward the Big Lots Store and called 911. The defendant and co-defendant then took off in the van . . ."

(Def.-Appellant's Br. on Appeal, 1, docket #1, Page ID#21.)

Petitioner was charged with assault with intent to murder, MICH. COMP. LAWS § 750.227; carrying a concealed weapon, MICH. COMP. LAWS § 750.227; assault with a dangerous weapon, MICH. COMP. LAWS § 750.82; possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b; and use of a financial transaction device, MICH. COMP. LAWS

§ 750.157n(1). In exchange for Petitioner's plea to assault with intent to murder, the remaining four charges were dismissed. In addition, the parties entered into a "Cobbs[1]" agreement whereby Petitioner's minimum sentence would not exceed nine years. On September 21, 2010, the trial court sentenced Petitioner to imprisonment of nine to twenty-five years.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising the following claims of error:

> I. Defendant-Appellant must be resentenced where the trial court abused its discretion when it scored 25 points rather than 0 points for Offense Variable 6 where the record did not support the attribution of intent at the level at which the Prosecution argued on the day of sentecing.
>
> II. Defendant-Appellant must be resentenced where the trial court abused its discretion when it scored 10 points rather than 0 points for Offense Variable 9 where the record did not support the number of victims as asserted by the prosecution on the day of sentencing.
>
> III. Defendant-Appellant must be resentenced where the trial court abused is discretion when it scored 10 points under OV 4 for serious psychological injury where the record does not support a finding of either "serious" or any psychological injury requiring professional treatment.

(Def.-Appellant's Br. on Appeal, ii, docket #1, Page ID#15.) The Michigan Court of Appeals denied Petitioner's application for leave to appeal on November 18, 2011, for lack of merit in the grounds presented. The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal on May 21, 2012.

In his application for habeas corpus relief, Petitioner raises the same three claims raised before and rejected by the Michigan appellate courts.

---

[1] *People v. Cobbs*, 505 NW2d 208 (Mich. 1993).

**Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

**Discussion**

Claims concerning the improper scoring of sentencing guidelines are state-law claims that typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence

recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).

Petitioner's sentence of nine to twenty-five years for assault with intent to murder clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485. The minimum sentence also was within the Cobb's agreement, and, thus, did not violate the plea agreement. Moreover, for the reasons set forth below, the Court finds that the state-court's rejection of Petitioner's sentence scoring claims was not based on an unreasonable determination of the facts

and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

### A. **Offense Variable 6**

Offense variable 6 is the offender's intent to kill or injure another individual. Offense variable 6 is scored as follows:

(a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer . . . . . . . . . . . . . 50 points

(b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result . . . . . . . . . . . . . . . . . . . . . . 25 points

(c) The offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life . . . . . . . . . . . . . . . . . .10 points

(d) The offender had no intent to kill or injure . . . . . . . . . . . . . . . . . . . . . . .0 points

MICH. COMP. LAWS § 777.36(1)(a)-(d).

Petitioner contends that he originally was scored 10 points for OV 6, but the prosecutor successfully argued on the day of sentencing that Petitioner should be scored 25 points for having an "intent to kill." Petitioner does not dispute the factual account in the presentence report that he aimed a gun at the victim's chest and, after the gun misfired once, fired two shots toward the victim. In his appellate brief, Petitioner argues, "It would seem that if one intended to kill or cause great bodily harm at this range, one wouldn't have missed." (Def.-Appellant's Br. on Appeal, 6, docket #1, Page ID#26.) Petitioner's argument is unpersuasive. Under Michigan law, the intent to kill can

be inferred from the use of a dangerous weapon, such as a gun. *People v. DeLisle*, 509 N.W.2d 885, 893 (Mich. Ct. App. 1993). Moreover, Petitioner pleaded guilty to the offense of assault with intent to kill. The fact that Petitioner is a poor shot does not negate his intent to kill.

### B. Offense Variable 9

Offense variable 9 is the number of victims. Offense variable 9 is scored as follows:

(a) Multiple deaths occurred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100 points

(b) There were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss . . . . . 25 points

(c) There were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss . . . . . . 10 points

(d) There were fewer than 2 victims who were placed in danger of physical injury or death, or fewer than 4 victims who were placed in danger of property loss . . . . 0 points

MICH. COMP. LAWS § 777.39(1)(a)-(d).

The scoring of OV 9 is not limited to a defendant's intended victims; it includes others who were placed in danger by the commission of the offense. *People v. Morson*, 685 N.W.2d 203, 210 (Mich. 2004). While the presentence investigator scored zero points for OV 9, the prosecutor argued at the sentencing hearing that Big Lots was open at the time the offense was committed, and, thus, other shoppers were placed in danger by the firing shots in the parking lot. Defense counsel objected, claiming that there was no evidence that anyone besides Mr. Thompson was in the general path of the bullets fired by Petitioner. The trial court ruled in favor of the prosecutor and scored 10 points for two to nine victims. Petitioner does not argue that the court's decision was based on false information. *Tucker*, 404 U.S. at 447. Rather, Petitioner argues that the court's sentencing findings

were not sufficiently supported. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. Moreover, it was entirely reasonable for the court to conclude that other shoppers were placed in danger by Petitioner firing a gun in the parking lot while the store was open.

      C.     **Offense Variable 4**

Offense variable 4 is psychological injury to a victim. The offense variable is scored as follows:

    (a) Serious psychological injury requiring professional treatment occurred to a victim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10 points

    (b) No serious psychological injury requiring professional treatment occurred to a victim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0 points

MICH. COMP. LAWS § 777.34(1)(a)-(b). The statute further provides, "Score ten points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MICH. COMP. LAWS § 777.34(2).

Petitioner argues that the trial court erred by scoring 10 points for OV 4. Petitioner contends that while there was a reference to a victim impact statement, it was not appended to the presentence report or contained in the court file. In addition, the victim did not appear at the sentencing hearing and make a statement. Consequently, Petitioner claims that there is no evidence in the record from which the trial court could find injury to the victim requiring professional treatment. Once again, Petitioner does not allege that the trial court relied upon material misinformation. He argues only that there was insufficient evidence to support the trial court's scoring of the offense variable, which falls far short of establishing a due process violation. In any event, it was not unreasonable for the trial court to conclude that the victim suffered serious

psychological injury as a result of being shot at by Petitioner, particularly when, under the express language of the statute, the prosecutor need not show that the victim actually sought psychological treatment.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   December 17, 2012          /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE